FAULKNER, Justice.
Gold Kist, Inc., and Rick Bronaugh petition this Court for writs of mandamus directing the trial court to grant their motions for change of venue. We find the evidence in support of the motions insufficient to show an abuse of discretion by the trial court in denying the change of venue and, therefore, we deny the writs of mandamus.
The plaintiffs in this case are a group of farmers from Houston, Geneva, and Dale counties. On March 8, 1985, they filed fraud and misrepresentation suits in the Circuit Court of Houston County against Gold Kist and Bronaugh, an agent of the company. The complaints allege that Gold Kist, through its agent, made representations to the farmers’ “buying point agent” that Gold Kist peanut contract prices would match the prices of competitors in the area and that the farmers relied upon these representations and entered into early contracts with Gold Kist, and that Gold Kist refused to honor these representations. Following the trial court’s denial of their motion for change of venue without a hearing on the issue, Gold Kist filed a petition for writ of mandamus with this Court, requesting an order directing the trial court to hold a hearing to inquire into the merits of its motion. We ordered the trial court to hold an evidentiary hearing on the issue of *870 venue. At the conclusion of that hearing, the trial court found that a lot of suspicion had been raised in the mind of defendant Bronaugh, but that no evidence had been submitted to indicate that the general public was prejudiced against the defendants. The court also stated that it was possible for a fair and impartial jury to be selected from the population of Houston County and therefore denied the motion.
In support of their motions for change of venue, the petitioners submit in essence that (1) the pretrial publicity surrounding the case would mitigate against the probability of a fair and impartial jury because it created a preconceived notion against the defendants and (2) farming was so important to Houston County that the defendants could not receive a fair trial in an action involving farmers. In support of its position, the petitioners presented four witnesses and twelve media exhibits concerning four different cases in which Gold Kist was a party litigant. The first case was an action that Gold Kist filed against one of its “buying point managers,” Nathan Mathis, to compel him to turn over peanut contracts to it at the end of the contracting season. This action was filed in the United States District Court in Montgomery, and Judge Varner ruled in favor of Gold Kist and against Nathan Mathis, ordering him to give over the contracts to Gold Kist. The second litigation involved a lawsuit by Houston County farmers against Gold Kist, filed in Houston County Circuit Court but later removed to the United States District Court, alleging that a misrepresentation had been made by the Gold Kist buying point manager in Ashford, Alabama, concerning the price of peanuts. This action was later tried in February of 1985 before United States District Judge Myron Thompson, and a six-woman jury returned a verdict in the sum of $180,551.00. The third and fourth suits referred to in the newspaper and media articles are the instant actions, wherein a group of Houston, Geneva, and Dale, County farmers filed actions against Gold Kist and Bronaugh for damages stemming from misrepresentation concerning their contracts. These last two actions are separate and distinct from the first two actions mentioned above.
All of the petitioners’ witnesses agreed that peanut farming has a tremendous impact on the Dothan area economy. One witness testified that farmers and the farm economy exercise a pervasive influence over the area. The only testimony concerning the belief that a fair and impartial trial could not be had was from petitioner Bro-naugh, as follows:
“A. I’m not saying that the people of Houston County will not give me a fair trial. I think that probably would be the case, but I am not certain that Gold Kist would get a fair case.”
The petitioners submitted no evidence of the potential number of prejudiced jurors or any other statistical evidence of either the actual or probable venue make-up.
The decision to grant a party’s motion for change of venue rests solely within the sound discretion of the trial court and will only be disturbed upon a showing of gross abuse of discretion. Liberty National Life Insurance Company v. Weldon, 267 Ala. 171, 100 So.2d 696 (1958); International UAW v. Palmer, 267 Ala. 683, 104 So.2d 691 (1956); Ex parte Morrow, 259 Ala. 250, 66 So.2d 130 (1953).
Justice Jones, in his special concurring opinion in Braswell v. Money, 344 So.2d 767, 771 (Ala.1977), wrote affirmatively that the ultimate question for the court in adjudicating whether the trial court erred on the venue question is whether
“the evidence of prejudice [is] so compelling that the trial court was bound to reach a single conclusion: the [party] cannot obtain a fair and impartial trial.”
In consideration of the petitioners’ contention that prior media publicity would prevent a fair and impartial trial, we look to the case of Liberty National Life Insurance Co. v. Weldon, supra. This case involved an action against Liberty National for the wrongful death of a minor child resulting from the alleged negligence of the insurance company in issuing policies on the minor child’s life to her aunt, who *871 had no insurable interest, and who subsequently murdered the child. This Court held that the trial court did not abuse its discretion in denying motions for change of venue, even though there was substantial pretrial publicity, which included statements on the theory on which the plaintiff sought to recover damages from the defendants, the amount of damages claimed, the ruling of the trial court on the demurrers, the date the case was set for trial, and the fact that it involved questions of considerable interest to the legal profession and to the insurance business. The media story also called attention to the fact, already well known by most people in Alabama at that time, that the aunt who purchased the insurance had been electrocuted for the murder of her niece and that she was the first white woman to be electrocuted for crime in Alabama. However, notwithstanding the intense publicity and interest surrounding the Weldon case, the trial court determined that the motion for change of venue was due to be denied, and this Court affirmed that decision. This Court wrote at 267 Ala. 180, 100 So.2d 703:
“The matter of granting change of venue is addressed to the sound discretion of the trial court. Littlefield v. State, 36 Ala.App. 507, 63 So.2d 565... Newspaper publicity does not necessarily constitute grounds for a change of venue. Littlefield v. State, supra. We see nothing in the newspaper account which would justify us in holding that the trial court abused its discretion in denying the motions for change of venue. Nor could we put the trial court in error on the mere statement of counsel for the defendants below that the defendants could not get a fair trial in Elmore County because the people of that county were aroused over the fact that Mrs. Dennison had murdered Shirley.”
In Weldon we had a case of substantially greater publicity value and public interest than the present cases involving a few farmers against their cooperative. Each of the media witnesses presented by the petitioners agreed that a case with facts and circumstances such as Weldon would present more notoriety, publicity, and newsworthiness than the instant cases.
The petitioners also submit that due to the pervasive influence that farming has on Houston County they cannot obtain a fair and impartial trial there. In the case of Braswell v. Money, supra, a similar argument was made concerning Troy State University and Pike County. It was alleged that Troy State exercised pervasive influence over the public because it was the area’s leading industry and greatest economic force. In holding that there was not sufficient evidence to prove local prejudice, this Court stated that the fact that the people of the community are generally interested in the question involved is not sufficient to prove prejudice to the extent necessary to prevent a fair trial. In addition, the Court found no evidence that the community had formed opinions concerning the case. The only testimony as to the belief that a fair and impartial trial could not be had was from a petitioner; that is also the case here. Petitioner Bronaugh testified that he felt that Gold Kist could not get a fair trial, but did not believe that about himself. To say that farming has an impact on Houston County is stating the obvious; however, we find no evidence to compel a finding that the petitioners cannot obtain a fair and impartial jury in Houston County.
It is on these grounds that the writs are denied.
WRITS DENIED.
TORBERT, C.J., and ALMON, SHORES, ADAMS and HOUSTON, JJ., concur.